IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
SAVANNAH DIVISION

FILED
U.S. DISTRICT COURT
SAVANNAH DIV.
2025 AUG -1 P 1:05

CLERK_____
SO. DIST. OF GA.

BOBBY DOTSON,
Plaintiff,

v.

HYUNDAI ENGINEERING AMERICA, INC.,
Defendant.

Civil Action No. CV425 180 _____

## COMPLAINT FOR VIOLATIONS OF TITLE VII AND 42 U.S.C. § 1981
### (JURY TRIAL DEMANDED)

### I. INTRODUCTION

1. Plaintiff, Bobby Dotson, brings this action against Defendant Hyundai Engineering America, Inc. for unlawful employment practices in violation of Title VII of the Civil Rights Act of 1964 and 42 U.S.C. § 1981.

2. Plaintiff asserts claims for race and national origin discrimination, retaliation, hostile work environment, interference with protected activity, and constructive discharge.

### II. JURISDICTION AND VENUE

3. Jurisdiction is proper under 28 U.S.C. §§ 1331 and 1343, as this action arises under federal law, including Title VII and 42 U.S.C. § 1981.

4. Venue is proper in the Southern District of Georgia under 28 U.S.C. § 1391(b), as a substantial part of the events or omissions giving rise to these claims occurred in this district.

## III. PARTIES

5. Plaintiff Bobby Dotson is an African-American male and a resident of Georgia.
6. Defendant Hyundai Engineering America, Inc. is a foreign corporation conducting business in Georgia. It may be served through its registered agent:

**Hyundai Engineering America, Inc.**
c/o **Registered Agent Keith Eum**
**3775** Venture Drive, Building E.
Duluth, GA 30096


7.The following Individuals were employed by Hyundai Engineering America, Inc. at all relevant times:

 Juhyun Yun (CEO)
Junhyeon Ji (Admin Manager)
Dooil Kim (Shane) (Utilities Manager)
Youngjae Ryu (Facilities Manager)
Youngbum Kim (Manager),

8.These individuals are identified in their roles solely for factual context and are not sued in their personal capacities . They are included in this complaint solely as agents of Defendant Hyundai Engineering America, Inc., which may be held liable for their actions under Title Vll and 42 U.S.C. 1981. Service shall be made upon Hyundai Engineering America, Inc. through their agent listed above.

## IV. FACTUAL BACKGROUND

9. Plaintiff  began work January 3 2024, as an Electrician after clearly notifying HEA that he had no training , degrees or certifications in the electrical field. On numerous occasions there has been training classes on various aspects of Facilities maintenance but nearly all of the training was in Korean which none of us Americans can understand. Shane has on many occasions made the statement that we need to learn how to speak Korean .
10.  Plaintiff was promoted to Junior Supervisor in June  2024, signing a formal agreement in August of 2024. He was initially told by Shane that no raise was available due to budget constraints, only to discover this was untrue. After threatening to step down, he received a raise in August of 2024.
11. On numerous occasions Plaintiff  requested to step down from his position due to the toxic environment that Shane and the rest of management did nothing to correct and seemed to promote. But each time plaintiff tried to step down he was denied.
12. In April 2025, Plaintiff's  Supervisor Role was swapped  with a Korean coworker, Daniel Yi, who was the Operations Supervisor, A position he got when Shane demoted another American (Justin Gray) because he could not speak Korean. Shane told the Plaintiff that it was best for the organization because guys on the Maintenance Team made statements that he was too strict and too hard on them . He later found out that this was untrue.This came only a day after Plaintiff saw a statement written by Justin Scott accusing plaintiff of using the wrong grease to re-grease equipment , plaintiff disputed this claim with emails from vendors and manufacturers clearly showing that plaintiff had indeed used the right grease,

plaintiff also called the vendors and had them tell Shane that plaintiff was correct. And for added context, On December 30 of 2024 Shane spoke with Plaintiff and advised him that Justin Scott had been going around telling people including HR that plaintiff had been to prison, Shane admitted that this could be damaging to plaintiff and stated that he would do something about it but never did. Despite strong performance and perfect attendance plaintiff was demoted along with another American about a month after the Supervisor role swap with Daniel Yi, to shift lead while Daniel maintained Plaintiffs former Maintenance Supervisor position. This demotion came on or around two weeks after Shane told the Plaintiff and James Griffin (the other American that was demoted) that Americans will not make it past supervisor because if there is a higher position, the Korean Coporate office will send someone to fill it. when he filed his complaint he was told by HR that the demotion was a proposal and not final. However, while on paternity leave, the decision was finalized without notice, and Plaintiff was placed on 12 hr night shift but was later told By Mr. JI that he could remain on first shift until August 3 when plaintiff pointed out that his fiance just had his newborn and he needed to be home at nights to support his newborn and fiance.

13. June 2, after plaintiff texted the former HR manager Sean Song and confided in him about Shane's actions toward him, Sean sent him a text acknowledging that he Sean saw this coming for the plaintiff and that he tried to stop this type of discrimination but got fired for it.

14. Plaintiff filed a formal discrimination complaint with HR on June 3, 2025 concerning the demotion and other illegal acts.

15. On July 1, Plaintiff emailed Mr. JI and Shane once he saw the finalized restructuring chart that officially demoted him. He asked for clarification as to how was he demoted while on paternity leave when Mr. JI had assured him in emails that the demotion was not official. Mr. Ji once again told plaintiff that his position, pay and classification had not changed, but Shane sent him an email stating that his official title to HMGMA is Shift lead.

16. Plaintiff sent Mr. JI several more emails asking for documented proof of classification and job description. On July 14 Mr. JI sent Plaintiff a operations supervisor agreement that omitted salaried and only had non exempt when plaintiff was salaried non exempt prior to the demotion. This operations supervisor agreement also had unrealistic job requirements that plaintiff does not possess and HEA knows he does not possess. Plaintiff refused to sign it due to the fact that he will be held liable if he claims to possess the qualifications that he does not have and that the classification on the agreement omitted salaried and only had non exempt. Plaintiff also adds that since he signed the Jr supervisor employment agreement in August of 2024 he has not signed another employment agreement but has been classified as Assistant Manager, Maintenance Supervisor, Utilities Supervisor and Operations Supervisor and that none of these classification changes were agreed upon by him nor were they even discussed with him.

17. Plaintiff returned to work from paternity leave on July 2 and was threatened by Shane, who admitted in an email making the threat but tried to downplay it by saying it was a misunderstanding. Yet when plaintiff filed a police report on July 3, Shane made an entirely different statement to the police. After Shane made the threat plaintiff found out that the CEO Juhyun Yun was scheduled to visit to speak with him about the June 3 complaint.

18. Immediately after Shane made the threat, Plaintiff emailed Mr. JI a complaint concerning the threat, yet Mr. JI failed to escalate it claiming that it could be discussed with the june 3 complaint once the CEO came to visit and Mr. JI also defended Shane's actions in numerous emails. Therefore plaintiff filed a complaint against Mr. JI to the Korean Coporate office.

19. July 3, plaintiff filed an EEOC complaint concerning the discrimination and retaliation. On July 30 plaintiff received his right to sue letter.

20. On July 4, the CEO Mr. Yun texted plaintiff and advised him that he was about to catch a flight from California to Georgia to speak with him about the complaint and asked if we could meet on July 5, 6 or 7. Plaintiff texted back and advised Mr. Yun of the fact that he had emailed the Korean HQ. and expressed concerns about the CEO conducting the investigation on the grounds that a CEO cannot be unbiased but plaintiff agreed to meet with Mr. Yun the next day and did meet Mr. Yun July 5 at his hotel in pooler . Mr Yun advised the plaintiff that he could not speak good English and proceeded to used google translate to communicate which plaintiff could not understand all of because of the poor quality. Mr. Yun did advise the plaintiff that he felt that internal HR had not handled the investigation properly and that he was hiring an outside party (employment lawyer) to take over. Mr. Yun also told plaintiff that he did not feel it was a good ideal for Shane and him to work together because Shane was too emotional. And since that time Shane has not worked the same days as plaintiff has.

21. On July 7 Mr. JI emailed Plaintiff and stated" as of today, Hyundai Eng America, inc has officially requested an external law firm to conduct an investigation regarding the reported matter. And on few minutes later Mr. Brian Sopp of HunterMaclean emailed plaintiff asking if we could meet Thursday or Friday.

22. Plaintiff emailed Mr. Sopp back and agreed to meet and provided Mr. Sopp a with a list of Questions he wanted answered before the meeting. One of the questions was "are you representing Hyundai ENG America or are you conducting this investigation as a neutral third party". Mr. Sopps response was " I have been retained to act as a neutral fact finder". Also when plaintiff met with Mr. Sopp at his office Mr . Sopp stated that he did not represent anyone and that he was a neutral fact finder.

23. Plaintiff began emailing Mr. Sopp evidence on July 8 after Mr. Sopp asked him to. He started by sending him screenshots of chats where Shane had exited himself from on April 8, the exact same day he claimed that the guys on the maintenance team made the statements. These chats had vital text between plaintiff, Shane and the former HR. Manager Sean Song, whereas both praised plaintiff for hard and dedicated work and admitted that fact that they should acted upon certain issues with disrespectful employees. They even praised plaintiff for always being professional. Plaintiff also emailed Mr . Sopp a complete witness list and what they could attest to.

24. Plaintiff later found out that Mr . Sopp was not a neutral fact finder and that he works directly for HEA to protect them, and that his law firm only represents corporations and not claimants against coporations and that Mr Sopp presented himself as neutral as a ploy to get plaintiff to fully Coporate as plaintiff did. Plaintiff has since submitted a bar complaint against Mr. Sopp for his deception .

25. In December of 2024 plaintiff scored superior on his evaluation , the highest score to be made and he was the only one to do so and was promised a 6% raise yet when Mr. JI presented him with the document to sign for the raise in late march or early April it was only $1000. Far less than the 6% promised. There was no explanation and still has not been one. Yet Daniel Yi who scored lower than plaintiff got a bigger raise.

26. In April 2024 Mr. Ryu presented Plaintiff with a document related to the supervisor switch with Daniel for him to sign.

27. Plaintiff had been classified as an assistant manager from September of 2024 until April of 2025 when he was once again reclassified without his knowledge or consent and without signing any other agreement outside of the August 2024 Jr Supervisor agreement. This time

he was classified and utilities supervisor. Plaintiff was classified as assistant manager and performing the task of assistant manager, creating transmittals, purchase orders , negotiating service contracts with vendors , researching laws, rules and regulations for legal requirements for testing and inspections of equipment. Creating maintenance schedules and test sheets. Spare parts list and so on. He did not receive a pay increase. He still made the $74.000 he signed for when he signed the Jr Supervisor agreement, nor did he receive the recognition, he was not shown on any organizational chart as an assistant manager, only Supervisor. Yet when Yunah Do who is a Korean was hired as an assistant manager plaintiff was reclassified as utility supervisor and Yunah Do is getting paid an assistant managers pay and she is recognized on organizational charts as an assistant manager.

28. On numerous occasions Plaintiff asked Mr. JI to provide him with the raise document that he Mr. JI provided plaintiff with and the document Mr. Ryu presented him with, yet Mr. JI claimed that there was only one document and that that was the one Mr. Ryu presented and sent plaintiff a document that he Mr. JI claimed was the one Mr. Ryu presented and stated that the document had Mr. Ryu name on it. Yet Mr JI had actually sent the document that he Mr. JI had presented concerning the evaluation raise and it had Mr. JI signature . When plaintiff pointed this out Mr. JI sent the exact document but this time it had Mr. Ryus signature scribbled on it besides Mr. JI signature.

29. on July 15, Plaintiff initiated an OSHA complaint regarding unsafe assignments and the issuance of the operations supervisor agreement which listed the unrealistic technical qualifications  that plaintiff does not have and would put him and others in danger if plaintiff attempted to undertake, OSHA is currently investigating.

30. Even though Plaintiff had OSHA initiate an investigation into HEA requiring him to perform unsafe work plaintiff was again ordered by Youngbum Kim to perform hazardous work on July 27, and when he refused, Shane Kim publicly belittled Plaintiff in a company group chat, further contributing to a hostile and retaliatory work environment.

31. Plaintiff has since been moved to night shifts despite having a newborn, further isolating him and causing emotional distress. Yunah first told Plaintiff that there would be monthly rotations, yet She has now changed it whereas plaintiff will be on night shift for two months.

32. Plaintiff has learned that witnesses who agreed by text message to  testify about the discrimination and unsafe practices withdrew out of fear, citing retaliation against other employees such as Sean Song, Christopher Johns  and Charles Kim , who were allegedly fired and later settled with the company in July 2025.

33. Plaintiff also emailed Mr. Sopps law firm numerous times asking for clarification on whether Mr. Sopp was a neutral fact finder or was he hired by HEA to protect them. The managing partner Shawn Kachmar  emailed back twice and stated that Mr. Sopp was hired by the company but would not clarify that he was indeed a neutral third party fact finder. Sopp was in fact retained by Hyundai Engineering, undermining the integrity of the internal investigation.

34. Despite multiple complaints and documented retaliation, Plaintiff remains in a hostile and unsafe work environment, where he is marginalized, humiliated, and set up to fail by agents of the company.

35. As a result of the hostile and retaliatory work environment, plaintiff sought counseling in or around February 2025 and met with a licensed therapist on two occasions. These sessions were initiated due to heightened anxiety, workplace stress, and emotional distress caused by Defendants conduct.

## V. CLAIMS FOR RELIEF

### COUNT I: Race and National Origin Discrimination (Title VII & § 1981)

36. Plaintiff was treated less favorably than similarly situated Korean employees.
37. Plaintiff was demoted during restructuring, while Korean employees were retained in supervisory positions.
38. Defendants replaced Plaintiff with a Korean coworker despite Plaintiff's performance and tenure.
39. These actions constitute unlawful discrimination based on race and national origin.

### COUNT II: Retaliation (Title VII & § 1981)

40. Plaintiff engaged in protected activity by opposing discrimination, unsafe work conditions, and filing internal complaints and an OSHA complaint.
41. Plaintiff was demoted, reassigned unsafe tasks, denied proper evaluations, excluded from meetings, assigned night shifts, and publicly humiliated in retaliation for these actions.

### COUNT III: Hostile Work Environment

42. Plaintiff was subjected to continuous retaliation, including public belittling, false accusations, unsafe work assignments, and exclusion from leadership roles.
43. The severity and pervasiveness of this conduct altered the terms of his employment and created a hostile and intimidating workplace.

### COUNT IV: Retaliatory Reassignment and Anticipated Constructive Discharge

44. Defendants intentionally reassigned Plaintiff to roles and responsibilities for which he lacked the required qualifications, despite being fully aware of Plaintiff's stated limitations, lack of training, and ongoing safety concerns
45. These actions were taken in bad faith and were intended to provoke failure, undermine Plaintiff's performance, or pressure him to resign, in retaliation for protected activity including Plaintiff's EEOC and OSHA complaints.
46. Plaintiff remains employed, but the working conditions have deteriorated to such a degree—through demotion, exclusion, unsafe assignments, forced night shifts despite having a newborn, and continued harassment—that a reasonable person in his position would feel compelled to resign.
47. Plaintiff continues working solely to provide for his family but reserves the right to amend this claim should the hostile and retaliatory conduct force him to resign in the future. These facts support a claim of retaliatory reassignment and anticipated constructive discharge under Title VII and 42 U.S.C. § 1981.
48. On July 31, 2025, Plaintiff was publicly harassed by coworker Brenden Randolph in a company group chat, wherein Randolph made hostile and retaliatory remarks, falsely accusing Plaintiff of disrespecting the Korean culture and being unfit for leadership. Randolph also stated that "we call what Bobby is doing an attempt of power if position", The statement occurred in front of other employees and constituted a deliberate act of humiliation and retaliation. Despite formal complaints to management and references to HEA's own policies, no disciplinary action was taken, indicating either implicit endorsement or failure to act by leadership. This incident constitutes ongoing retaliation and contributes to constructive discharge environment.

## VI. PRAYER FOR RELIEF

Plaintiff respectfully requests that the Court:

A. Enter judgment in favor of Plaintiff on all counts;
B. Award compensatory and punitive damages in an amount to be determined at trial (estimated to exceed: $300,000);
C. Order injunctive relief requiring Defendant to correct its discriminatory practices and reinstate Plaintiff's fair position with proper compensation and classification;
D. Award costs and attorney's fees pursuant to 42 U.S.C. § 1988;
E. Grant such other relief as the Court deems just and proper.

## VII. JURY DEMAND

Plaintiff demands a trial by jury on all issues so triable.

Respectfully submitted,

Bobby Dotson
100 Lord Effingham Dr.
Rincon, GA 31326
bobbydotson31@gmail.com
912-844-2736
Pro Se Plaintiff

*Bobby Dotson* (signature)